The threshold facts that I would like the court to keep in mind are, number one, that Scanlon and Pacific Windows did all that they could to make sure this coverage was replaced and that it was continuous. The first application went in in October of the preceding year, another application went in in December, and a third application went in that was received on December 28th. Do you agree that the binder became effective on the date that it states it became effective and the time, at 327 p.m. January 12th? No. You don't. What do you think made the binder go into existence? There was an oral contract between Mr. Scanlon and Mr. Hamlin on January 10th. When the quote was presented, when Mr. Scanlon accepted the quote and asked for changes to the policy, that's when I think the policy, the actual contract, was created. The binder was delayed in time because Heath didn't submit the changes to the managing general agent timely. If the court will recall, the changes were transmitted by Scanlon on the 10th. Like changes in the number of vehicles? The additional vehicles and drivers. They were submitted on the 10th after they had confirmed the binder. Heath sent in the request for changes on the 11th, but didn't attach the list of vehicles or drivers, and then when they were requested by Pacific Gateway to do so, they sent them in on the 12th, and that's when Pacific Gateway took the position the binder occurred. But it's my position, our position, that the binder occurred way before that because Heath was the agent of NICO. Counsel, how does the issuance of the policy affect the binders? The court, the cases say that once the policy is issued, the binders are annulled. Under the facts of this case, how does that play out? Well, first of all, the court is aware of our argument concerning what the statutory interpretation of the policy has to be. Now, we... But to get to Judge Robinson's question, suppose you had a binder on the 10th. Yes. Then you enter into a policy, meanwhile you negotiate the policy, and the policy date says the first day of the next month. Right. When you say the binder's annullity, doesn't it, you mean it doesn't cover anything that happened between January 10th and the 10th? Well, there's a... That's not an easy question, but... Well, I thought the purpose of a binder was to give you coverage up until the time you enter into a contract. No. No. The contract is made when the binder occurs. Yes. Until the time you enter into a contract, the actual policy. Until the contract is issued, because the contract, the issued contract contains the forms, the insuring agreements, exclusions, limitations, and so forth, that are not included in the binder, but only adopted by the binder by reference. So the policyholder doesn't know all the terms, conditions, and provisions. He doesn't know all the terms, but he knows that this coverage is supposed to start at the time the binder starts. But you say that changes retroactively if the policy date is later than the binder date. Yes. I mean, the binder, the binders, the binder conveys coverage as of its effective date, whether it's oral or written. Now, the policy may have a different effective date. If it has a different effective date and time, it doesn't nullify the binder because the binder is existing alone. You just said it does nullify the binder. No, no. Only if they're concurrent. Well, that's a little different. That was the question. Only if they're concurrent. It's until the policy incepts, you have a binder. Yes. And there's a big issue in this case about when the policy incepted. And about when the binder incepted. Right. But you're saying that if even if the defendant is right, that the policy, the penalty rather is right, that the policy didn't incept until three twenty seven, you had the binder. That's correct. Binder covers the period up and up until the time that the policy incepts, whenever that happens to be correct. And you're saying the binder goes back to January 10. Yes. The real issue, the linchpin issue. I mean, there's two big. All right. And upon the issue of the policy, when it started, they wrote in three twenty seven. Yes. The printed form says as the statute requires midnight twelve oh one or whatever it is. But the statute, the next sentence of the statute says that it can be changed if the application for the coverage is for a later time. Yeah. No. It also says it can be changed in a binder. It says that it that it can be it can say no later than the application. That's a different thing. In other words, it can say the coverage won't incept prior to the application. But here with the application was weeks before. Well, prior to the application and prior to the date, you requested something or prior to the date requested in the application. I the way I read it is prior to the time the application submitted. Prior to the time applied for. Contract may provide that the inception time shall not be prior to the time applied for. So let's assume it means not the time of the application, but the time that you requested the coverage be effective. Right. Is there anything that's in the record that says that you requested coverage starting at three twenty seven rather than at midnight? No. We wanted coverage effective at the expiration of the Kemper policy on the 10th. What does the company do if the insurance company do if you say we want coverage from a certain day and they say, well, we're not going to cover you before we even heard of this. We'll cover you from the time that you came to us. You came to us at three twenty seven. Let's just not assume that's the fact you came to us at three twenty seven and asked for a policy. So we want to cover you from that minute on. We don't want to cover you for the first 15 hours of that day. Can they do that? Yes. How they issue a temporary binder from three twenty seven to midnight and then they make their policy effective midnight. That's the way they should have done it. If they were going to do it that way, that's the way they should have done it. Because the way they did it violates the statute. Now, the court may say that's a distinction without a difference. Well, no, I find the statute peculiar, but I agree. The thing that concerns me most here, though, is the court's finding with respect to the scope of Heath's agency, which I find the court found that Heath was the agent of Nyko only for delivery of the policy, which I think is a vast understatement of the scope of Heath's agency. I think Heath, the record clearly reflects a tribal issue, that Heath was at least a subagent and maybe a general agent of the carrier. And that evidence is that the producer's agreement and the binding procedures state that Heath could bind by his request without confirmation, giving an authority to bind, which the March McLennan case says is the hallmark of an agent. So is this argument going toward your position regarding when the binder took effect? Yes. And. Does it matter when the binder took effect if the policy has to incept at twelve oh one? In this case, no. If the policy incepts before the loss, then there's coverage and it doesn't matter. I mean, there's an issue about the two day gap in coverage where the where technically Pacific Windows fleet of trucks is operating without insurance in violation of its PUC and Department of Transportation authorities. Purposes of this case. Yeah. But for purposes of this case, if the statute required it to incept at twelve oh one a.m. on the 12th, then there's coverage and all the other issues are moot. That's why I asked my question about what happens to the binder when the policy incepts and your your position is that once the policy incepts, the binder goes away if it are concurrent in time, if they are concurrent. And is it your position that the binder and the policy were concurrent in time in this case? No. Why not? Because there's two binders. There's no it doesn't matter, though, to your case, whether the it with Judge Robinson was saying is if if you're right on your second point, that the policy started at midnight and then it doesn't matter whether the binder started that same day, in which case it's wiped out or if it started on the 10th, in which case you have two days of irrelevant coverage. Correct. You've got coverage as of midnight on January 12th. And the loss in question here happens later that day. Right. So that once once there's coverage, the other issues are moot. That's where the issue makes everything else go away. Yes. But if you lose on the statutory issue, then your position is that the binder became effective on the 10th and it is not wiped out for any period prior to the time the policy starts. Correct. I think we've got the position now. What's hard to understand is when a binder becomes effective, people call an insurance company or a broker or somebody and say, my insurance is expiring. Can you get me a binder? And they say, oh, sure. And how do you know when you have a binder? And what is it that made this binder take effect? I mean, the actual binder wasn't issued until February 1st. Retroactively. Right. Well, what in this case, what defines it is custom and practice in the industry. Under the Skyways case, you can see what a complicated analysis it is. It depends on, you know, the course of dealing of the parties. It there are the statements they make, the documents they exchange. You have to have agreement on. And I wouldn't have a binder. I don't know what this company does, but I assume you had a number of cars and then you added more cars. Well, they bought another company. Yeah. And the you needed coverage as of the 10th when your policy expired. Yes. And you wanted to cover the cars that you originally had. And you asked for that. And then you told them we've also got some more cars. So there were negotiations about, well, what are the other cars and what's the price? But from your standpoint, you would want a binder, at least for your own cars by then. Is there any reason that what do you need to have a binder? Do you have to have an agreement on all of the cars, what they will be, what the price will be? Or can you just get a binder that says you have coverage? Right. You have you get a binder if the risk is acceptable. Right. And in this case, there's no issue about the risk being acceptable. That's not the question. And would that binder cover the cars that were after acquired? I mean, steps after the original application that were then acquired and where they were waiting to get information as to that. Well, generally it would, because the only issue being price, they would quote you the price and then you would accept the price. But and then if you didn't agree, ultimately, even though you had a binder, you can say, well, we can't agree. We'll get another policy. You could do that. Or there are other alternatives. For instance, they say, well, we don't like these vehicles. You know, we can place a supplemental policy. We can you can you can not cover them for two days for any known losses and retroactively endorse the policy to the Kemper expiration date. There's a ton of things that you can do. But the court cut us off completely from showing the custom and practice and its impact in this case. And I think that was error. There was clearly a factual issue. OK. And in one word, one sentence, the binder became effective on the 10th because who said what to whom? Because Casey, because Mr. Scanlon told Casey Hamlin at Heath that they wanted the coverage bound case. Heath knew that the coverage had to be continuous because otherwise they'd be violating their operating authority. He had told them that he had a firm market and that he could cover the risk. These housekeeping matters do not prevent the attachment of coverage. Well, it was because he Scanlon told Hamlin. What did Hamlin say? Is it agree? No problem. OK. So it became a binder when Hamlin said no problem. Right. If they're the agent of. Michael, which I say they are by virtue of the evidence in the record, including their designation on the declarations page of a policy as a subagent. OK. So your your binder argument depends on Hamlin being the agent of Pacific Gateway. Yeah. My arguments against NICO in general depend upon. Heath being the agent of NICO, if they are not an agent of NICO, either apparent, ostensible or actual, the NICO has no no liability for their error. But in this case, there's the record was full of evidence that created a tribal, at least a tribal issue, in fact, of NICO's agency. OK. Thank you. I'll reserve my time. Good morning, Your Honors. If it pleases the court, I'm Susan Walker, counsel for National Liability Fire Insurance Company. This case does boil down to two issues. The first being whether insurance code section 460 requires that every insurance policy issued on a prenup form in California has an inception date of 12 or 1 a.m. And the second issue is whether there is a question of fact that the policy at issue in this case incepted at 327 p.m. on January 12th. I think the answer to both questions is also an issue. But when the binder became effective, Your Honor, to go back to the question on the binder, but we don't I don't want you to just listing the issues you can don't abandon your the ones you want to talk about most. But but there is not the issue is not only about when the policy became effective. It's also about when the binder became effective. Well, Your Honor, your opponents could prevail on either one. The question of when the binder became effective is subsumed in the question of the policy being issued, because I think to to look at the opening appellants brief, you asked the question, Your Honor, ask the question, how does the policy relate to the binder and what happens to the binder when the policy is issued? And the law is clearly stated in the opening brief. I think there's several important points to focus on with respect to a binder. And why don't why don't we start with the statutory argument that Judge Rawlinson asked about? Statute says that all the printed forms shall bear the time 1201 is an inception date. It seems to say, in effect, that policies shall start at 1201. Except you say, except there are certain circumstances in which it doesn't have to. What in the statute are you relying on? Anything other than the fact that the binder can start at a different time? I'm relying on paragraph two of the statute. The statute starts off in paragraph one and states a general rule, as you just summarized it. But paragraph two is where the crux of the binder, the crux of the case. It talks about the binder and the policy. And this is the point that paragraph two talks also about the policy is where specific windows interpretation of the statute falls apart. Where does paragraph two talk about the policy? Paragraph two says in the end of that second sentence, quote, as specified in the standard forms of form issued as the normal policy. So if you read the first sentence, it says this set of paragraph two, this section shall not prohibit an insurer from issuing a binder, whether it's oral or written, specifying an inception or termination hour other than 1201 a.m. Then the important point as specified in the standard forms or forms issued as the normal policy. Well, all they're saying is that 1201 is what's specified for the normal policy. No, no, Your Honor, those sentences are one thought and it talks about how the binder and the policy works in this exception. The inception, the general rule is printed form should stay 1201, but you have this exception. If you issue a binder with a different time, the policy that follows must state those different times. And that's because the law is clear that the binder ceases to exist. Any case that suggests that? Yes. I think the law is clearly stated in the opening brief on page 17. I'm going to quote from this. It's two cases. These are well-settled principles on the top of page 17 of the appellant's brief. A binder is an independent contract separate and distinct from the permanent insurance policy. That's an important point I want to go back to, that the binder is a contract. All the rules of contract formation apply, and a binder cannot be formed unless there's an offer and an acceptance. All right. Let's assume a binder is a contract. What does that have to do with the case? I said is there a case that says that your interpretation of paragraph 2, that that applies to the policy as well as to the binder? Oh, Your Honor, section 460 is not the subject of any case. The case that I was referring to is that there is a case that says once the policy is issued, the binder ceases to exist. And that is on the case. Is whether the 460 requires all policies to start at 1201 or whether there's an exception. You say there's an exception in paragraph 2, which appears to apply to binders. And you say, no, it doesn't just apply to binders. It's an exception for the policy itself. And that's where we were now. Number one, you said there's no case that discusses that either way. That's correct. So we're left with the statute. And your reading of the statute, it says, even though it says it shall not prohibit an insurer from issuing a binder with a different time, that that also means it shall not prohibit an insurer from issuing a policy with a different time, because when it lists 1201, it says that 1201 is specified in the standard forms issued in a policy. Your Honor, you have to read the first paragraph and the second paragraph as separate occurrences. The first paragraph is your standard form contract. The second paragraph is what you do when you deviate from that. The statute in the second paragraph allows you to deviate. It allows you to form a binder. The policy that follows, and that's where the second part of that sentence in paragraph two becomes important, says, as specified in the policy. Because that means as specified in the policy means the time other than 1201 must be specified in the policy. That answers the questions that started this argument about what is the relationship between the binder and the policy. The binder ceases to exist once the policy comes into effect. That case is on page 17 of the opening brief, and it's Smith v. Westland. It says a binder is only effective until one of two events, the insurance application is rejected or the policy issued. So when the policy is issued --- Okay. Let's take your first example. You give somebody a binder. Then you have negotiations about the policy. And at the end, you say, no, we don't want to give you a policy. You think you're not liable for the period of time when the binder was in effect? No, because the binder, the two occasions, case is Smith v. Westland. The binder exists until two things happen. The application is rejected. Right. Okay. That's what I said. You reject the application. The binder. A binder is a contract. Hold on. Hold on. Okay. You've given a binder on January 1st. Yes. On February 1st, you reject the application. The binder is in effect and no policy is issued. Yes. And there's coverage for that period. Right. And you go back to. So it doesn't wipe out the January coverage that you gave because simply because you've rejected the policy. Rejected the application. Yeah. The binder ceases to exist in two events. If the application is rejected or if a policy is issued. The paragraph two deals with what occurs when the policy is issued. Typically. Counsel, could we go back to that point? If you would issue a binder on January 1st and you reject the application on February 1st. If there is an accident on January 15th, does the insurance company cover that accident? It depends what the is the content of the binder. The answer is yes. The binder. Yeah. Okay. So it doesn't wipe it out retroactively. No, unless a policy is issued. No. And if a policy is issued, then we have a different question. Then if the policy is issued for a later date, does that mean the binder was ineffective? If it's issued for the same date. What happens to the 327 if it's issued for an earlier date? Suppose your policy said effective January 10th, even though the binder was not until January 12th. This is exactly why the section paragraph two of that says that the alternative time must be specified in the policy. Because when you issue the policy, it wipes out the binder. Therefore, you have to have the same times in the binder and the policy that follows. And that's that's how that paragraph works. So we're dealing with a situation where a binder is issued and a policy follows. Paragraph two says if you've issued a binder with a start time other than 1201, that same time has to be in the policy that follows. And the reason for that is because of the well-established case law that says when the policy is issued, it wipes out the binder. The policy could cover a period preceding the inception of the binder, in theory, because that's really what's being argued here. You could you could have a policy that commences retroactive to X date, which is before the I think that's what we've all been trying to get at, is that you could decide to issue a policy that goes back before the time specified in the binder. Your Honor, I disagree, because that first paragraph talks about standard forms and it says in a standard form, you can have certain language that says the policy will start, you know, 12 hours before or 12 hours after. So paragraph one is a self-contained unit. And that's talking about printed forms and what they can apply as to effective dates. Well, it doesn't say it can start 12 hours before or after the 12 hours before appears to cover when it can start. And the 12 hours after appears to cover when it can end because it talks about extending the period of coverage for either 12 hours preceding, which is the inception or 12 or following, which is after expiration. That's correct. And so to go. But none of that has anything to do with what Fogel asked you. I mean, why couldn't you enter into a binder for January 15th and then you negotiate a contract in which you say, well, we want the insurance to cover us back to January 1st. And both parties agree to that. Why not? You think the law prohibits that? You can do that. But what this statute, this is a very specific statute. This statute only addresses the inception of time. Well, that's what we have to focus on. Here's and I have to apologize in advance because I do a lot of patent law.  But this is a very interesting statute in the sense that if you look at at paragraph one, it gives you the general rule. Right. All policies incepted 12 or 1 a.m. And then if you look at paragraph three, it says this section is not prohibited. Ensure from issuing a policy with a different time. It gives there's a statutory exception for a policy. Paragraph two talks about the issuance of a binder. Does it doesn't say that you can have a policy. I mean, it doesn't come out and say what I think you're trying to say, that it says that may or may not be fatal to your argument. But it doesn't say you can have a policy that has the time as specified in a binder. It says you can have a binder that specifies a time other than 12 or 1. I disagree. I think that the only way you can give meaning to the second part of that first sentence in the second paragraph, which says, quote, as specified in the standard forms or formed issued as the normal policy. The only meaning that that can have is that the time that's in the binder, which is other than 12 or 1, has to be specified in the form. I'm not sure that that is the only meaning you can give it. The as specified in the standard form issued as a normal policy could refer to the 12 or 1. It's descriptive. It's descriptive. It doesn't necessarily have to be substantive. I mean, I think your reading is reasonable, too. But I'm just saying that it's not I don't think it's the only reasonable reading. The as specified in the standard form could refer to the standard form, which says 12 or 1. And you can have a binder that specifies some other time for the effective coverage of the binder. You know, frankly, I just don't think the legislature thought this one through. Wouldn't be the first time and won't be the last time. But I think, you know, it's surprising to me that there aren't any cases. Yes. And I think that the fact is there are not any cases and that the thrust of the second paragraph is to deal with a situation where you want to deviate from the start time of 12 or 1. And the important point to remember, you know, the questions that we got a moment ago about, well, can't you have a policy with a different date than a binder? I this statute deals with inception of time and not talking about dates. And it's, I think, very specific about what an insurance company has to do. Why doesn't this is I mean, I don't expect you to answer this question, but why couldn't they simply have said this section shall not prohibit a insurer from issuing a policy that incepts at a time other than 12 or 1 a.m.? And the way you do that is you issue a binder that has has this time. But instead, it talks about not being prohibited to issue a binder that has certain terms. You're asking me to, I think, somewhat speculate about why the legislature did it this way. And I think you don't even have a bond. Pardon me. You don't even have a bond. Do you get your policy a month in advance and you say we want to start this policy, this statute, you know, at noon and start the policy at noon instead of midnight. You know, I think in that situation you do have a binder because the binder is the oral agreement. If you want what this tells you, this is the prescription for how you can have a time other than 12 or 1. And a binder. Yeah. You don't have to have a binder, do you? Yes, you do. You always have to have a binder when you get a policy. You have to have a binder to have a time other than 12 or 1. You have to have a binder. That's what what the statute is, is set out. You can start at a different time if you get a binder, but you can't start at a different time if you just get the policy directly. That's correct. It's that simple. And the reason. OK, then let's take that simple. Let's just take the last couple of minutes to tell us when the binder starts. OK. In this case, counsel has said that the binder was formed on January 10th and there is no evidence in the record that that occurred. Counsel indicated the district court cut them off from showing that that occurred. That's not correct. This was a cross motion for summary judgment. There was every opportunity to put in any evidence. The evidence, the negotiation of the binder is laid out in documents going step by step by step. Well, I have the documents, but I can't tell what they mean. Counsel, was an oral agreement effectuate a binder if there were sufficient conversations to meet the requirements? Yes, this was an oral binder. And the oral binder was documented in writing. The oral binder formed on January 15th. And I'd be happy to walk you through how the. There was no binder until January 15th. That's correct. There was negotiation. And that's that's a key point. You issued a binder that says it was January 12th. That's correct. But there wasn't really a binder until January 15th. There was a contract was formed on January 15th, a binder, an oral binder, which is a contract was issued saying we are going to bind coverage effective 327 p.m. on January 12th. Absolutely correct. And I would like to take the court through how that occurs and why there was no binder formed on the 10th. This is the amount of paper that sets out the negotiation and the formation of the binder. It really is not complicated and it could not be clearer. Did you dispute whether or not Heath was an agent for the insurance company? Heath, yes. The Heath was a dual agent. And this is clearly set out in the record. For negotiation purposes, the discovery responses of Pacific Window state that Pacific Window had two agents negotiating the contract on its behalf. Scanlon, the retail broker, and Heath, the wholesale broker. And that's in their discovery responses. Negotiating on behalf of the insurance company was Pacific Gateway, their general agent. Heath, for subsequent purposes of collecting the premium, delivering the policy, was the insurance company's agent. And this is the Mahoney case and the Marsh-McLennan case. It's well settled that a broker who typically does business on behalf of the insured is the insurance company's agent for those limited purposes. And so here, to think that a binder could be formed on January 10th when you have Mr. Scanlon talking to Casey Hamlin, who is Heath, they're both the agents of the insured Pacific Window, there can be no contract. But why wouldn't that at least raise an issue of fact? And that's a key point. And I'd like to, the only piece of, the way that Pacific Windows had tried to raise a question of fact was with the declaration of Scanlon. And I think that the ninth circuit is. Are you on the excess of record when you were talking about the binder negotiations? The binder negotiations are at, if I could just state the different documents, 172 to 177. Is the first January 9th offer, 247 to 253, is Heath presenting that to Scanlon saying, here's your quote, give a call to discuss. Page 255, this is a critical document, is Scanlon's response to the quote. And this, is that where Scanlon said that there needed to be more vehicles added or something? Correct. This document, page 255 in the record, it's interesting to note that in Scanlon's declaration, he says on page 459 of the record, I subsequently sent a fax to confirm our conversation. And that's on page 459. Well, here's the conversation. This is with Heath that he's confirming. Note these changes. He wants to offer that certain coverages are deleted. He wants to add certain vehicles. And then you can do that with or without a binder. I mean, the fact that you're negotiating some of the terms of the policy doesn't tell you much about whether you have a binder. I think it tells you a lot. I think it tells you you do not have a binder because you're negotiating. That's exactly the point. A binder is a contract. There is no contract till there's an offer and acceptance. On January 9th, there was an offer. On January 10th, there's a counteroffer. And we're looking at. Why do you need a binder if you have all the details of the contract agreed to? You don't have any contract agreed to. You have an offer on the 9th. You have a counteroffer. You said you can't have a binder if you're still negotiating some of the provisions of the contract. Correct. Then when do you need a binder? You need a binder when you don't have a binder as a temporary contract. But it is a contract. You don't have a written policy. A binder can be oral. But a binder is a contract when you have an offer and an acceptance. And you don't have a binder until you have the two things. But if you have, if you've agreed on all the terms, couldn't the insurance company say, yes, you've got a contract for a policy. We'll mail you the policy. When the yes, a binder is an agreement on all the terms. And you do not have that on the 10th. What you have on the 10th is a counteroffer. Counsel, is the premium a term that has to be agreed on before a binder can issue? Not always. But in this case, yes. And that's an excellent question. Skyways is the case that Pacific Windows relies on Skyways, which says that when a binder is issued, price can be assumed that the insured agrees to pay whatever is the reasonable price. Those cases in Skyways did not include a counteroffer like this where the insured comes back and says, quote, I need a premium of $68,000. And that's why there is no applied agreement to pay whatever is reasonable there. They're saying what they want in this contract of insurance. They're specifying a term. And so Skyways is completely distinguishable. OK, I'm afraid we've gone three minutes over already. Thank you very much. Thank you. Just a couple of points. You have an affidavit or something that says he said you have a binder. Yes. So the only issue as far as you're concerned is whether he's had the authority to bind the insurance. Right. Where's that affidavit in the record? That's Mr. Scanlon's second declaration. The council and the briefs go through. I mean, NICA went through in its appellee's brief a long dissertation about why you should ignore the declaration of Mr. Scanlon. And absolutely, it's admissible and should have been considered by the court. The fact is, he said there was an oral binder. And the fact is that although Mr. Hamlin filed a declaration in this case in support of NICO, he did not contradict that statement that he had made an oral binder. So the only evidence is that there was an oral binder. And the question that that leaves the remaining question, was Heath authorized? And the reason that Heath is authorized is because of the producer's agreement and the binding procedures that say they can bind by their own request, which gives them authority that's conferred upon agents. And that makes them an agent. The policy identifies them as a subagent. That makes them an agent. A second copy of the policy produced by NICO in this case identifies them as an agent. That's at the excerpts of record. I say he's an agent for certain purposes, but not for others. Can't be. If he has the authority to bind, he's a general agent. And he has the scope of authority that's conferred upon agents to effectuate the task with which they're charged. You can't say, can't parse it out like that. Either is what he says. You can't parse it out. Skyways, Marsh, McLennan. All right. Well, thank you very much. We've learned a lot about insurance law. More than we needed to know. Case is argued will be submitted in the court. We'll take a brief recess before.
judges: Reinhardt, Rawlinson, Fogel